IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PIO MENDOZA and AMADO MENDEZ, on behalf of himself and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 7:19-cv-882 |
| v. | ) By: Elizabeth K. Dillon |
| | ) United States District Judge |
| BAIRD DRYWALL & ACOUSTIC, INC., GUILLERMO GUARDADO FIALLOS, d/b/a/, GGF DRYWALL, RAMIRO TORRES MARTINEZ, d/b/a TORRES DRYWALL, GONZALEZ DRYWALL, LLC, and LUIS ALONSO CANTURAL, d/b/a LARA CONSTRUCTION, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |
| BAIRD DRYWALL & ACOUSTIC, INC., | )<br>) |
| Third-party plaintiff, | ) |
| v. | ) |
| GUILLERMO GUARDADO FIALLOS, d/b/a/, GGF DRYWALL, RAMIRO TORRES MARTINEZ, d/b/a TORRES DRYWALL, PREZCO LLC, GERMAN OMAR GUIFARRO ACOSTA, d/b/a ACOSTA CONSTRUCTION, GONZALEZ DRYWALL, LLC, and LUIS ALONSO CANTURAL, d/b/a LARA CONSTRUCTION, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Third-Party Defendants. | ) |

**MEMORANDUM OPINION**

This is an action alleging that Baird Drywall & Acoustic, Inc., a construction subcontractor, and several labor brokers or sub-subcontractors, violated the Fair Labor Standards Act (FLSA) by not paying overtime and/or minimum wage to its workers. Before the court are the following motions: (1) plaintiffs' renewed motion for conditional collective action certification and judicial notice (Dkt. No. 103); (2) motions to dismiss Baird's third-party complaint by third-party defendants Torres Drywall (Dkt. No. 105), GGF Drywall (Dkt. No. 130), and Acosta Construction (Dkt. No. 137); and (3) Joseph Britt's motion to reconsider the dismissal of his claims with prejudice (Dkt. No. 72). The court held a hearing on these motions on February 19, 2021. (Dkt. No. 150.)

For the reasons stated below, plaintiffs' motion for class certification and judicial notice will be granted as to class certification and denied without prejudice as to judicial notice, the motions to dismiss Baird's third-party complaint will be granted, and Britt's motion to reconsider will be granted.

I.  BACKGROUND

Baird is a subcontractor that works with general contractors on specific construction projects, including large ongoing projects at Virginia Tech, Liberty University, Radford University, Lynchburg College, Roanoke College, Washington & Lee University, Virginia Military Institute, and Carilion Hospital in Roanoke. Baird generally provides framing, drywall, and similar construction work. The named plaintiffs, Pio Mendoza and Amado Mendez, were hired as laborers for Baird. In total, Baird employs approximately 150–200 laborers.

Instead of paying laborers directly, Baird pays them through middlemen called labor brokers, or "sub-subcontractors." Even though the workers routinely work between 48 and 64

2

hours per week, they are not paid any overtime compensation. Rather, Baird (through labor brokers) pays a flat hourly rate for all hours worked, without the mandatory overtime premium.

Within the past three years, Baird has used the following labor brokers to obtain and pay for labor on its job sites: Guillermo Guardado Fiallos (d/b/a GGF Drywall), Ramiro Torres Martinez (d/b/a Torres Drywall), German Omar Guifarro Acosta (d/b/a Acosta Construction), Gonzalez Drywall LLC (Jose Armando Gonzalez-Martinez), and Luis Alonso Lara Cantural (d/b/a Lara Construction LLC). (Third Am. Compl. ¶¶ 8–21, Dkt. No. 94.) These entities are named as co-defendants with Baird in the third amended complaint. (*Id.*) On February 3, 2021, plaintiffs voluntarily dismissed their claims against Acosta Construction. (Dkt. No. 146.) Plaintiffs' claims are now against Baird and the other four labor brokers identified in the third amended complaint: GGF Drywall, Torres Drywall, Gonzalez Drywall LLC, and Lara Construction.

GGF Drywall and Torres Drywall have served as the middlemen for the vast majority of Baird's laborers. Named plaintiff Mendoza worked for Baird through GGF Drywall from 2012 through December 2018, and again from December 2019 through April 2020. Named plaintiff Mendez worked for Baird through Torres from 2018 to April 2019. Mendez also worked for Baird through GGF from 2014 to 2016.

Baird's policies and supervisory practices are uniform for all workers on all job sites. In addition to its laborers, Baird employs about 15–18 foremen and foremen-in-training who supervise the job sites. The foremen do the layout for the jobs. This layout process entails reviewing the project blueprints, then marking chalk guidelines and shooting a "track" down on the building floor. Once the layout is done, Baird's laborers follow the layout to install framing

and drywall. Baird's foremen are responsible for making sure the laborers perform up to Baird's standards and the general contractors' standards.

The laborers on Baird job sites are supervised by Baird's foremen. The Baird foremen tell the laborers what work to do on the jobsite and where to do it. The Baird foremen review and comment on the laborers' work and instruct them to redo it if it does not meet Baird's standards for workmanship. Baird's foremen can terminate laborers for not doing good work that is up to Baird's standards or for other reasons.

Baird's foremen set the work schedules for the laborers. The work schedule is the same on all job sites: 7:00 a.m. to 5:30 p.m. on Monday through Thursday, and 7:00 a.m. to 3:30 p.m. or 5:30 p.m. on Fridays. When Baird's foremen require or allow laborers to work on the weekends, the hours are typically 7:00 a.m. to 3:30 p.m. on Saturdays and 7:00 a.m. to 12:30 p.m. or 3:30 p.m. on Sunday. Baird provides all the materials and heavy equipment necessary for the laborers to do the construction work required.

When this action was originally filed, Joseph Britt was the named plaintiff. On October 26, 2020, the court issued a memorandum opinion and order denying plaintiffs' motion for conditional certification because Britt did not file a timely consent to be a party to collective action. (Dkt. Nos. 61, 62.) The court also granted leave to file an amended complaint, except with respect to Britt, and dismissed Britt's claims with prejudice. (*Id.*) The amended complaint substituted Mendoza as the named plaintiff. (Dkt. No. 63.) Eventually, the complaint was amended to add Mendez as an additional named plaintiff. (Dkt. No. 94.) Along the way, Baird filed a third-party complaint for contribution and indemnification against labor brokers GGF Drywall, Torres Drywall, Acosta Construction, Gonzalez Drywall, Lara Construction, and

4

Prezco, LLC. (Dkt. No. 67.) Torres Drywall, GGF Drywall, and Acosta Construction have moved to dismiss the third-party complaint.

Plaintiffs move for conditional class certification and dissemination of judicial notice to the following class:

> All past and present laborers of Defendant Baird Drywall & Acoustic, Inc. who, at any time from December 30, 2016 through the present, ongoing, were hired through labor brokers or sub-subcontractors to provide framing, drywall, ceiling, or similar construction labor for the benefit of Defendant Baird.

(Dkt. No. 103.) Baird and GGF Drywall have filed briefs in opposition to conditional certification. (Dkt. No. 138, 140.) Torres Drywall adopts and joins in these opposition arguments. (Dkt. No. 141.)

Finally, Britt seeks to revive his individual FLSA claims, challenging the court's dismissal of his claims from this action with prejudice.

## II.  ANALYSIS

**A.  Motion for Conditional Certification**

Section 216(b) of the FLSA allows a plaintiff alleging a violation of the statute to bring suit on his own behalf or on behalf of other employees who are similarly situated. *Long v. CPI Sec. Sys., Inc*, 292 F.R.D. 296, 298 (W.D.N.C. 2013). FLSA certification requires that (1) putative class plaintiffs are "similarly situated" to named plaintiffs and (2) plaintiffs joining the class "opt-in" by filing their consent with the court. 29 U.S.C. § 216(b).

Courts in the Fourth Circuit follow a two-stage approach to FLSA certification. *See Hoffmann-La Roche Inc.*, 493 U.S. 165 (1989); *Spencer v. Macado's, Inc.*, No. 6:18-cv-00005, 2019 WL 4739691, at *2 (W.D. Va. Sept. 27, 2019) (endorsing two-stage approach). At the first stage, the court makes a preliminary determination whether to conditionally certify the class

5

based upon the limited record before the court. *Spencer*, 2019 WL 4739691, at *2. This initial inquiry proceeds under a "fairly lenient standard" and requires only "minimal evidence," *Long*, 292 F.R.D. at 298, such as "factual evidence by affidavits or other means," *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012); *Meeker v. Med. Transport, LLC*, No. 2:14-cv-426, 2015 WL 1518919, at *3 (E.D. Va. Apr. 1, 2015) (stating that conditional certification authorizes judicial notice to potential plaintiffs if the named plaintiff can provide the "minimal evidence" or a "modest factual showing" that "they and potential plaintiffs together were victims of a common plan or policy"). "The primary focus in this inquiry is whether the potential plaintiffs are 'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011) (quoting *De Luna-Guerrero v. N. Car. Grower's Assoc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)). "Put another way, the touchstone at this stage is merely whether Plaintiffs have demonstrated some factual nexus connecting them to other potential plaintiffs as victims of an unlawful policy." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00363, 2012 WL 4739534, at *4 (E.D. Va. Oct. 2, 2012). The merits of plaintiff's claims are not relevant at this stage. *See Spencer*, 2019 WL 4739691, at *2 ("In assessing whether conditional certification is appropriate, the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations."). "If the class is conditionally certified, the court typically authorizes plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in." *Romero*, 796 F. Supp. 2d at 705.[1]

---

[1] Defendants argue that when, as here, the parties have completed significant discovery, the court should apply a stricter burden when evaluating a motion for conditional certification. *See Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10cv592, 2011 WL 4351631, at *16 (W.D.N.C. Sept. 16, 2011) (applying an "intermediate" burden when the parties had three months to conduct discovery, took a number of depositions, and exchanged written discovery responses). Plaintiffs maintain that significant discovery still needs to be taken. The difference between this intermediate standard and the minimal standard described herein is not relevant to the outcome of this motion.

The court proceeds to stage two if the defendant files a motion for decertification, typically after discovery is virtually complete. *Spencer*, 2019 WL 4739691, at *2. "Accordingly, throughout the second stage, courts apply a heightened fact specific standard to the 'similarly situated' analysis." *Long*, 292 F.R.D. at 299. "Upon a determination that the plaintiffs established the burden of proving they are 'similarly situated,' the collective action proceeds to trial." *Id.* If the court determines that the plaintiffs are not similarly situated, the class is decertified and the original plaintiffs may proceed on their individual claims. *Spencer*, 2019 WL 4739691, at *2.

Finally, the FLSA does not define the term "similarly situated," and the Fourth Circuit thus far has not provided guidance on its meaning. Courts in this circuit find that putative class members are similarly situated for purposes of § 216(b) if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Romero*, 796 F. Supp. 2d at 705. "There must be sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *LaFleur*, 2012 WL 4739534, at *4. The situations "need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Romero*, 796 F. Supp. 2d at 705.

Plaintiffs argue that all plaintiffs and potential opt-in plaintiffs are similarly situated because they were all paid pursuant to defendants' common pay policy that deprived them of overtime wages. All plaintiffs and potential opt-in plaintiffs:

7

- Shared the same job duties for Baird: framing, drywall, ceiling, and similar construction work. (Mendoza Decl. 5–7, Dkt. No. 104-3; Mendez Decl. 3–5, 8–9, Dkt. No. 104-17);

- Were all subject to the dominant control of Baird's foreman, who had authority to fire the workers, managed and supervised their work, had substantial control over the premises, and determined the nature, location, work hours, and extent of the construction work that plaintiff and other laborers performed each day. (Mendoza Decl. 7–11; Mendez Decl. 8–11);

- Were subject to the dominant control of Baird because "Baird provides all the materials for the job, including all framing, drywall, lumber, paint, moldings, and other construction materials. Baird also provides all the heavy tools and equipment necessary for the laborers to do the construction work required, including ladders, scaffolding, lasers, 'TrakFast' fastening tools, sledgehammers, chop saws, Sawzalls, hammer drills, concrete saws, and other heavy tools and equipment." (Mendoza Decl. 9);

- Regularly worked 48–64 hours per week for Baird: 7:00 a.m. to 5:30 p.m. Monday through Thursday, 7:00 a.m. to 3:30 p.m. Fridays, Saturdays and/or Sundays 7:00 a.m. to 3:30 p.m. or 5:30 p.m. when there was weekend work. (Mendoza Decl. 11–13; Exs. 4–7 (sample timesheets), Dkt. Nos. 104-4, 104-5, 104-6, 105-7;

- Were paid a flat hourly rate. (Jeff Dillon Dep. Tr. 52–54, Dkt. No. 104-14; Exs. 4–9);

- Were paid no overtime wages. (Mendoza Decl. 11–14; Mendez Decl. 7, 17–25; Exs. 4–7 (sample timesheets); Exs. 10–13 (sample check stubs), Dkt. No. 104-10, 104-11, 104-12, 104-13);

- Were all subject to Baird's common policy of paying for their labor through the labor broker defendants in an effort to circumvent the FLSA's overtime requirements. (Mendoza Decl. 14–18; Mendez Decl. 7, 17–25; Acosta Decl. 4, Dkt. No. 104-18; Dillon Tr. 52–54).

Moreover, defendants have a common policy regarding worksite supervision. At issue is whether Baird is the employer, the labor broker defendants are employers, or Baird and the labor broker defendants are joint employers for purposes of the FLSA. The answer to that question will be the same for all plaintiffs and putative plaintiffs, no matter which labor broker Baird uses to pay them or which sites they work on. Courts have granted conditional certification in this situation, reserving "consideration of whether separate employers are joint employers for a final,

stage two determination." *Rivera v. Power Design, Inc.*, 172 F. Supp. 3d 321, 327 (D.D.C. 2016); *Presson v. Recovery Connections Cmty.*, No. 5:18-CV-466-BO, 2019 WL 3047114, at *3 (E.D.N.C. July 11, 2019) (granting conditional certification and observing that the court does not need to resolve "at this step whether the responding defendants were, in fact, joint employers under the FLSA").² Defendants argue that the use of labor brokers and the employer/joint employer analysis will require individualized determinations or a broker-specific analysis. This is not the case because Baird's pay and worker control practices are the same at all job sites. *See, e.g.*, *Field v. Andarko Petroleum Corp.*, 2020 WL 6075633, at *3 (S.D. Tex. Oct. 15, 2020) ("In my mind, it does not matter if there were two, 10, or 100 staffing companies involved. All that matters at this juncture is that Field has sufficiently alleged that he and similarly situated class members were the victims of a single pay policy: a failure to pay overtime to those classified as independent contractors and paid a day-rate.").

In response, Baird likens this case to cases denying conditional certification where the policy or plan can be attributed to others. *See, e.g.*, *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544 (E.D. Va. 2009); *MacGregor v. Farmers Ins. Exchange*, No. 2:10cv388, 2011 WL 2981466 (D.S.C. July 22, 2011). In *Purdham*, school board employees who performed after-school services sued for minimum and overtime wages. 629 F. Supp. 2d at 550. The court denied conditional certification against the school board because pay decisions were made at the individual school level, not the school-board level. *Id.* Similarly, in *MacGregor*, the court declined to conditionally certify a class of insurance adjusters whose overtime premium depended on individual supervisors, not a company-wide policy. No. 2:10cv388, 2011 WL

---

² GGF Drywall argues both that a higher standard of scrutiny should apply in this case because substantial discovery has been taken and that certification should be denied because "all fingers point to Baird as the true and sole employer." (Dkt. No. 140 at 5.) However, as noted above, discovery is still ongoing, and significantly, the labor broker defendants had yet to be deposed when this motion was briefed and argued.

9

2981466. Under this line of cases, Baird argues that conditional certification must be denied because plaintiffs and the putative plaintiffs have not made the required showing of an illegal, common scheme of Baird to deny them of overtime pay. The cases cited by Baird are distinguishable because they involve situations where the employer had a policy of paying overtime, but the employees alleged that they did not receive all of their overtime pay in certain circumstances. In *MacGregor*, for example, the employees did not receive all overtime due to uncompensated off-the-clock work which was caused by different administrative polices and decisions by individual supervisors. No. 2:10cv388, 2011 WL 2981466, at *3–4. *Purdham* dealt with public school employees seeking overtime pay for time spent on after-school functions. Pursuant to FLSA regulations, these public employees were not entitled to overtime pay for time spent on certain tasks they volunteered to do for a nominal fee or where the work was done "on an occasional or sporadic basis and solely at the employee's option." 629 F. Supp. 2d at 550. Because these inquiries were "highly individualized," the court declined certification. *Id.* at 550, 552.

By contrast, defendants have a uniform policy of paying only straight time and not paying overtime for overtime work. Several courts have granted conditional certification when employers use a "straight time for overtime" policy. *See, e.g.*, *Myers v. Loomis Armored US, LLC*, 2019 WL 3338172, at *1, *3 (W.D.N.C. July 25, 2019) (certifying class of service technicians who asserted policy of being paid "straight time for all hours worked on weekdays, even when their hours worked on weekdays were in excess of forty hours per week"); *Lee v. JLN Constr. Servs., LLC*, 2018 WL 2193815, at *4 (D. Md. May 14, 2018) (certifying class of construction workers who asserted they were "completely denied overtime pay or would only be paid overtime for some hours worked over forty . . . . Accordingly, they have met their burden of

showing a common policy, scheme, or plan existed"); *Flores v. Unity Disposal & Recycling, LLC*, 2015 WL 1523018, at *4 (D. Md. Apr. 2, 2015) (granting conditional certification when "Plaintiffs' declarations suggest that the flat-rate payment policy was not just limited to Plaintiff, but was, instead, a company-wide practice that affected all helpers and drivers employed by defendant as sanitation workers").

Finally, Baird argues that certification is inappropriate because Mendoza, who was paid through GGF Drywall, and Mendez, who was paid through Torres Drywall, are not similarly situated to workers paid through other labor brokers.  This is not the case for the reasons already stated: plaintiffs have demonstrated that the straight-time-for-overtime pay policy, and Baird's control over employment conditions are the same for all workers, no matter which broker was used to facilitate payment.

For these reasons, the court will grant the motion for conditional certification.

**B. Proposed Notice**

Defendants have lodged a series of objections to the notice proposed by plaintiffs.  At the hearing, plaintiffs did not object to meeting and conferring with defendants to develop a proposed notice and notice procedure.  The court will deny the request for the proposed notice and direct the parties to meet and confer.

**C. Third-Party Defendants' Motions to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is to "test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Also, a complaint must be dismissed if it does not allege a "plausible claim for relief." *Id.* at 679.

Baird, as noted, filed a third-party complaint against the labor brokers for indemnification and contribution. The labor brokers executed contracts with Baird containing similar indemnification provisions. *See, e.g.*, Third Party Compl., Ex. 1, ¶ 9; Ex. 6, ¶ 9.[3] The labor brokers argue that Baird's third-party complaint should be dismissed because employers cannot contract around the requirements of the FLSA. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992) (rejecting defendant's attempt to "indemnify itself . . . for its own violation of the

---

[3] **9. Indemnification**

    a. Independent Contractor herby [sic] agrees to defend, indemnify and hold harmless the Company (and if required by the Master Contract, the Owner and General Contractor), and their agents and employees (collectively referred to as "indemnitees") from all liabilities, claims, judgements, losses, costs, expenses, demands, penalties, attorney fees, and other costs of whatsoever nature, except to the extent caused by the sole negligent acts or omissions of the indemnitees, for: any breach by the Independent Contractor's violation of any law, code, or regulation; injury to or death of any person or damage to or destruction of any property arising out of or in any way connected with the performance of the Work by the Independent Contractor or any employee or agent of the Independent Contractor.

    b. The obligations of this Section 9 shall not be restricted, impaired or modified by the provisions of any worker's compensation laws.

    c. The obligations of this Section 9 shall survive any termination of this Agreement.

(Dkt. No. 67-1 at BDA-000219.)

FLSA, something the FLSA simply will not allow"); *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) ("There is no right of contribution or indemnification for employers found liable under the FLSA."); *Scalia v. Employer Solutions Staffing Group, LLC*, 951 F.3d 1097 (9th Cir. 2020).

Baird argues that the FLSA does not preempt a contractual indemnification agreement concerning the allocation of responsibilities under the FLSA. According to Baird, it does not offend public policy for two arm's length parties to affirm each of their respective responsibilities to pay their own employees' due wages. Baird also argues that the motions are premature at the pleading stage because Baird alleges that it is not plaintiff's employer. If that allegation is taken as true, then "there would be no public policy argument against permitting [Baird] to recover indemnification from [third-party defendants] for [third-party defendants'] conduct." *Iztep v. Target Corp.*, Civil Action No. SA-06-CA-568-XR, 2010 WL 2278349, at *24 (W.D. Tex. June 4, 2010).

As a recent district court opinion explained, some cases have "recognized the availability of a contractual indemnity or contribution claim by a putative employer against its joint employer." *Robertson v. REP Processing, LLC*, Civil Case No. 19-cv-02910-PAB-NYW, 2020 WL 5735081, at *5 (D. Colo. Sept. 24, 2020) (collecting cases including *Iztep*). However, for "each FLSA case that permits contractual indemnity claims . . . there is a case that prohibits the same." *Id.* (collecting cases).

The court in *Robertson* agreed with the latter group of cases. The court was unpersuaded by the argument that indemnification is proper because there may be a joint employer relationship, or that defendant may not be plaintiff's employer at all. In the case of a joint employer, "permitting employers found to have violated the FLSA to seek indemnification

would nevertheless undermine the purpose of the FLSA, which is to ensure employers' compliance with minimum employment standards and to protect employees, not employers." *Id.* at *7 (citing *Scalia*, 951 F.3d at 1103). Moreover, the defendant "may continue to assert, as a defense throughout this litigation, that it is not plaintiff's employer, and if successful, . . . will not need to seek indemnification." *Id.*

The court agrees with the reasoning in *Robertson* and other cases which find that indemnification claims are preempted by the FLSA. As in *Robertson*, the court construes Baird's claims as seeking indemnification and contribution under the FLSA. *See* Third Party Compl. ¶¶ 40–42 ("Baird's right to indemnification includes . . . the right to indemnification for any damages Baird may owe Mendoza . . . . Pursuant to Baird's contracts with GGF, Baird is entitled to defense and indemnification from GGF if GGF failed to properly compensate Mendoza and others . . . . If Baird and GGF are joint employers, Baird is entitled to contribution from GGF."). Neither claim is contemplated by the FLSA's "comprehensive remedial scheme." *Robertson*, 2020 WL 5735081, at *6 (quoting *Scalia*, 951 F.3d at 1104). Therefore, the court will grant the motions to dismiss filed by third-party defendants Torres Drywall, GGF Drywall, and Acosta Construction. *See McDougal v. G&S Tobacco Dealers, LLC*, 712 F. Supp. 2d 488, 497 (N.D.W. Va. 2010) (finding that indemnification claims, whether "based on contractual or equitable contribution, indemnification, breach of contract, breach of warranty, agency, or another state contract or equity claim, are preempted by the provisions of the FLSA.").

**D. Motion to Reconsider Dismissal of Britt With Prejudice**

For the reasons stated on the record at the hearing, the court will grant this motion and direct the clerk of court to open a separate new case with Britt's proposed amended individual complaint.

### III.  CONCLUSION

For these reasons, the court will issue an appropriate order granting plaintiffs' motion for conditional class certification and denying without prejudice their motion for judicial notice, granting the motions to dismiss Baird's third-party complaint filed by third-party defendants GGF Drywall, Torres Drywall, and Acosta Construction, and granting Britt's motion for reconsideration.

Entered: June 15, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge